UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  EDCV 14-02097-VAP (KKx)                     Date:  January 9, 2015

Title:  BNI ENTERPRISES, INC., A CALIFORNIA CORPORATION, et al. -v- REFERRAL LEADERS INTERNATIONAL, LLC A MISSOURI LIMITED LIABILITY COMPANY, et al.

================================================================
PRESENT:       HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

| Marva Dillard | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

PROCEEDINGS:   MINUTE ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DOC. NO. 10) (IN CHAMBERS)

   On October 30, 2014, Plaintiffs BNI Enterprises, Inc., and BNI Franchise Corp. (collectively, "BNI") filed an application for temporary restraining order against Defendants Referral Leaders International, LLC, and Timothy Chin ("Chin") (occasionally referred to collectively as "RLI").  (Doc. No. 10.)  The Court denied the application for a temporary restraining order, but set a briefing schedule for the instant Motion for Preliminary Injunction ("Motion" or "Mot.").  (Doc. No. 14.)  Though the Court directed RLI and Chin to file a response to BNI's request for a preliminary injunction, to date neither defendant has filed a response.

The Court vacated the hearing on the Motion set for December 19, 2014. (Doc. No. 18.) After consideration of the papers filed in support of the Motion, the Court GRANTS the Motion and enters and injunction against RLI and Chin as outlined below.

## I. BACKGROUND
### A. Allegations in the Complaint

BNI is "an international business networking organization that operates though company-owned regions and franchised regions." (Complaint (Doc. No. 1) ¶ 10.) Members of a BNI chapter meet regularly to develop personal relationships with other business professionals and to learn how to engage in word-of-mouth marketing. (Id.) Members pay a membership or franchise fee to BNI. (Id. ¶ 11.) Those in chapter leadership positions pay no fee while they occupy their position. (Id.)

Defendant Timothy Chin ("Chin") is the founder of a competing business, Referral Leaders International, LLC ("RLI"). (Id. ¶¶ 5, 12.) Previously, Chin was a "leadership team member" of BNI, thereby making him privy to BNI materials and business information. (Id. ¶ 27.) Chin left BNI to start RLI. (Id. ¶¶ 27-29.)

BNI alleges that, beginning in October 2014, Chin and RLI have engaged in a campaign to poach BNI members through telephone calls, direct mailings, and misrepresentations on the RLI website. (Id. ¶¶ 15-19.) Over 5,000 direct mail letters have been sent by RLI to BNI members. (Id. ¶ 15; Compl. Ex. A.) BNI alleges that these communications contain numerous falsehoods, for example, the direct mail letters state that Chin was the President of one of the fastest growing BNI chapters in the United States, that he became a partner in that region, and that he helped a BNI chapter to grow from 120 members to 680 members in thirty months. (Compl. ¶ 16.) The letters disparage BNI's business model, asserting that BNI does not provide support to its chapters, unlike RLI. (Id. ¶ 18.) Finally, the letters include a chart containing numerous falsehoods, including: (1) BNI does not offer "free business coaching"; (2) BNI does not offer "Live On-Line Member Training"; and (3) BNI only offers a "Cross Chapter Referral Program" to some chapters. (Id. ¶¶ 21-

23.) This chart also appears on the RLI website. (Compl. Ex. B.) BNI alleges that RLI's campaign has resulted in lost profits from sales of memberships to current and potential members, among other damages. (Id. ¶ 31.)

The Complaint alleges four claims: (1) false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) tortious interference with contractual relations; (3) tortious interference with prospective economic relations; and (4) unfair and unlawful business practices, in violation of California Business and Professions Code § 17200 et seq.

## B. Procedural History

BNI filed the Complaint in this action on October 10, 2014. On October 30, 2014, BNI filed the application for temporary restraining order. Chin filed an Answer to the Complaint in pro se on November 7, 2014. (Doc. No. 12.) RLI has not appeared in this action and no response to the application for temporary restraining order or the Motion has been filed by Chin.[1]

## II. LEGAL STANDARD

A party seeking a preliminary injunction must demonstrate that it "is likely to succeed on the merits [of its claims], that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Alternately, the party may show "serious questions going to the merits" (rather than a likelihood of success on the merits) and still obtain an injunction or order if the "balance of hardships tips sharply" in its favor "and the other two Winter factors are satisfied." Friends of the Wild Swan v. Weber, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). Ultimately, the party seeking a preliminary injunction must meet the relatively high burden of making a clear showing that it is entitled to one. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam).

---

[1] On December 5, 2014, BNI filed a request for the Clerk to enter default against RLI. (Doc. No. 17.) The Clerk entered default against RLI on December 29, 2014. (Doc. No. 19.)

# III. DISCUSSION

## A. BNI Is Likely to Succeed on the Merits of its Claims

### 1. False Advertising

In order for BNI to obtain a preliminary injunction, it must first show that it is likely to prevail on the merits of its claims. BNI's first claim alleges RLI and Chin violated the Lanham Act by making "literally false" statements in advertising materials to BNI members, in an attempt to induce those members to join RLI. (Mot. at 11.)

"Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in the advertizing and sale of goods and services." Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc., 407 F.3d 1027, 1036 (9th Cir. 2005) (citing Smith v. Montoro, 648 F.2d 602, 603 (9th Cir. 1981)). The circumstances typifying the "classic" Lanham Act false advertising claim occur when "one competito[r] directly injur[es] another by making false statements about his own goods [or the competitor's goods] and thus inducing customers to switch." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1393 (2014) (citing Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 800-01 (5th Cir. 2011) (some quotation marks omitted)).

A plaintiff must prove the following elements to state a claim for false advertising under the Lanham Act:

> (1) in its . . . advertisements, defendant made false statements of fact about its product or the product of another; (2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) defendant caused its falsely advertised goods to enter interstate commerce; and (5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the good will which its products enjoy with the buying public.

Oracle Am., Inc. v. TERiX Computer Co., Inc., 2014 WL 31344, at *9 (N.D. Cal. Jan.

3, 2014) (citing Summit Tech., Inc. v. High–Line Med. Instruments, Co., 933 F.Supp. 918, 929 (C.D. Cal. 1996)).

In order to have standing to assert a claim of false advertising under this section, a plaintiff must allege "(1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." Jack Russell, 407 F.3d at 1037 (citing Barrus v. Sylvania, 55 F.3d 468, 469 (9th Cir. 1995)).

Here, BNI has alleged RLI has made false statements about BNI's services, and that BNI has suffered injury though loss of members and loss of potential members. Accordingly, BNI has standing to assert a Lanham Act claim.

### a. False Statements of Fact

In order to state a claim for false advertising, BNI must first show that some statements in the letters sent by RLI to BNI members and the statements on RLI's website about BNI's business practices were false. A plaintiff can demonstrate falsity in two ways under the Lanham Act: (1) statements that are literally false, either on their face or by necessary implication, or (2) statements that are literally true but likely to mislead or confuse customers. Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997) (citing Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943, 946 (3d Cir. 1993)). BNI does not allege any statements of the latter variety.

"When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context. Considering the full context, the fact finder must determine just what is claimed by the advertisement. Next the fact finder must evaluate whether that claim is false." Am. Optometric Soc., Inc. v. Am. Bd. of Optometry, Inc., 2012 WL 2135350, at *7 (C.D. Cal. June 12, 2012) (internal citations and quotation marks omitted). "Where the advertisement is literally false, a violation may be established without evidence of consumer deception [and] the court

may enjoin the use of the claim without reference to the advertisement's impact on the buying public." Mut. Pharm. Co. v. Ivax Pharm., Inc., 459 F. Supp. 2d 925, 933 (C.D. Cal. 2006) (citations omitted).

### i. The Services Offered by BNI

BNI contends that RLI and Chin have made numerous false statements about BNI's services and Chin's previous affiliation with BNI.

BNI avers that a chart included with Chin's letter to BNI members, which is also present on the RLI website, contains numerous falsehoods. That chart is reproduced below:

## Networking Comparision Chart

| | RLI | BNI | LeTip | Chamber of Commerce |
|---|---|---|---|---|
| Free Business Coaching | ✓ | ✗ | ✗ | ✗ |
| Free Non-Profit Seat | ✓ | ✗ | ✗ | Some Chambers |
| Industry Exclusivity | ✓ | ✓ | ✓ | ✗ |
| Veterans Discount | ✓ | ✗ | ✗ | ✗ |
| Earn Your Money Back Guarantee | ✓ | ✗ | ✗ | ✗ |
| Sponsor 4 Members and get a FREE Life Time Membership | ✓ | ✗ | ✗ | ✗ |
| Live On-Line Member Training | ✓ | ✗ | ✗ | Some Chambers |
| HUGE Nationwide Retail Discounts | ✓ | ✗ | ✗ | ✗ |
| Cross Chapter Referral Program | ✓ | Some Chapters | ✓ | ✗ |
| Phone App Member Directory | ✓ | ✗ | ✗ | Some Chambers |
| Compensated Chapter Presidents | ✓ | ✗ | ✗ | ✗ |
| 50/50 Revenue Sharing Chapters | ✓ | ✗ | ✗ | ✗ |
| Can Purchase and Own Chapters | ✓ | ✗ | ✗ | ✗ |
| NASCAR Sponsorship | ✓ | ✗ | ✗ | ✗ |
| Joint Venture Opportunities | ✓ | ✗ | ✗ | ✗ |
| Monthly Speed Deal-Making Meetings | ✓ | ✗ | ✗ | ✗ |
| Guranteed Chapter Growth Systems | ✓ | ✗ | ✗ | ✗ |
| Referral Secure Marketing System | ✓ | ✗ | ✗ | ✗ |
| Referral Fees For New Chapter Referrals | ✓ | ✗ | ✗ | ✗ |

(Compl. Exs. A, B.)  In the context of the letter, the import of the chart is not difficult to discern.  The chart has checkmarks denoting a service or product that RLI, BNI, and other organizations provide, and an "x" denoting a service or product that is not provided.  BNI contends that RLI's representation that RLI offers some services that BNI does not is false.  Specifically, BNI contends the following representations about its services are false:

(1) BNI does not offer "Free Business Coaching"
(2) BNI does not offer "Live On-Line Member Training"
(3) BNI only offers a "Cross Chapter Referral Program" in some chapters.

(Compl. ¶¶ 21-23; Exs. A-B.)  The Motion attaches the declaration of Ivan R. Misner, the President and Chief Executive Officer of BNI Enterprises, Inc., to support BNI's contentions. (Declaration of Ivan R. Misner ("Misner Decl.") (Doc. No. 10-1) ¶ 18.) In his declaration, Misner says that each of these representations made by Chin and RLI "is false!"; the implication being that BNI does, in fact, offer "Free Business Coaching" and the like.  (Id. ¶ 18.)  As neither Chin nor RLI has filed a response to the Motion, and Misner's declaration is uncontested, the Court finds that the statements made by RLI regarding BNI's business services were false.

### ii. Chin's History of Success as a Member of BNI

Additionally, BNI contends that Chin's representations in the letters mailed to BNI members and on the RLI website were false.  First, it takes issue with Chin's representation that he "was the President of one of the fastest growing BNI Chapters in the US, a record that still holds its own today."  (Compl. ¶ 16(a).)

BNI supports the allegation that this statement is false with the declaration of Steve Wiegert.  (Declaration of Steve Wiegert ("Wiegert Decl.") (Doc. No. 10-2).)  In his declaration, Wiegert states that he is a BNI franchise owner and is the Executive Director for the regions of Kansas City, Wichita, and Northeast Kansas.  (Id. ¶ 1.) Wiegert oversaw two chapters that Chin was affiliated with.  (Id. ¶ 4.)  Chin was the President of one chapter, the "BNI KC Plaza" chapter, from October 2006 to September 2007.  (Id. ¶ 5.)  This chapter had 19 members when Chin became president and had 46 members at the time he left.  (Id.)  According to Wiegert, Chin "could, at most, claim to be responsible for about 59% of the region's growth" and,

moreover, Weigert is "unaware of any record growth within the BNI organization held by Mr. Chin or the chapters with which he worked."

The Court finds that there is insufficient evidence to find that this statement is a literal falsehood; it is much more akin to puffery than a false statement. "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." <u>Newcal Indus., Inc. v. Ikon Office Solution</u>, 513 F.3d 1038, 1053 (9th Cir. 2008) (citing <u>Cook, Perkiss, & Liehe v. Northern California Collection Service, Inc.</u>, 911 F.2d 242, 246 (9th Cir. 1990)). Accordingly, "a statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." <u>Id.</u>

The Court first addresses the part of the sentence in which Chin states he was "President of one of the fastest growing BNI Chapters in the US." The general nature of this statement makes it puffery; Wiegert's statement that he was "unaware of any record growth," is not determinative. Chin makes no quantifiable statement that he had the fastest or even one of the five fastest growing chapters, only that he was *one* of the fastest. This subjectivity as to "one of the fastest" makes it puffery. <u>See</u> <u>Cook, Perkiss, & Liehe</u>, 911 F.2d at 246 (statement that business was the "low cost commercial collection experts" did not contain the kind of specific factual assertion to state a claim for false advertising); <u>JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.</u>, 128 F. Supp. 2d 926, 950 (E.D. Va. 2001) <u>overruled on other grounds JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.</u>, 28 F. App'x 207, 209 (4th Cir. 2002) (while speed is a measurable quantity, assertion that party provided the "[f]astest refund loans" was puffery).

Similarly, the statement that the chapter growth Chin fostered is "a record that holds its own today," is also puffery. This statement is entirely subjective and makes no specific claim, and thus cannot be an actionable misrepresentation. Moreover, it is also Chin's opinion; statements of opinion are generally not actionable under the

Lanham Act. PhotoMedex, Inc. v. Irwin, 601 F.3d 919, 931 (9th Cir. 2010) (citing Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999)).

Second, BNI complains that Chin asserts he became a "partner" in the region where he was chapter President. (Compl. ¶ 16(b).) From the context of Chin's letter and Wiegert's declaration, it appears as if "partner" has a specific meaning in the BNI organizational structure. According to Wiegert, Chin never became a partner in any of Wiegert's franchises. (Wiegert Decl. ¶ 7.) Accordingly, this also appears to be a false statement of fact.

Third, Chin's letter states that he "turned around a dysfunctional BNI Franchise in a very anemic market growing it from 120 members to 680 in 30 months." (Compl. ¶ 16(c).) According to Chin, this constituted "over 500% growth in less than three years." (Compl. Ex. A.) Wiegert says that this is untrue; when Chin joined Wiegert's region, there were 477 members, and by the time Chin left, there were 671 members. (Wiegert Decl. ¶¶ 9-10.) To the extent Chin claims that he turned around an underperforming BNI franchise, that statement is puffery, as it is a general, subjective claim. But to the extent Chin used specific numbers of members gained — and the related percentage increase based on those numbers — which have been refuted by Wiegert's declaration, the Court finds these to be false statements of fact.

In sum, the Court finds the following misrepresentations made by Chin and RLI to be false statements of fact under the Lanham Act:

(1) The following representations from the chart in the letter, and on the RLI website:

    (a) BNI does not offer "Free Business Coaching"
    (b) BNI does not offer "Live On-Line Member Training"
    (c) BNI only offers a "Cross Chapter Referral Program" in some chapters

(2) The representation in the letter that Chin was a partner in a BNI

franchise

(3) The representation that Chin created over 500% growth in a BNI franchise in 30 months by growing it from 120 members to 680.

As noted above, because the Court finds that these representations are literally false, it may presume that those representations would have a tendency to deceive the public. Mut. Pharm. Co., 459 F. Supp. 2d at 933. The Court next turns to whether the remaining elements of a Lanham Act claim have been alleged.

### b. Remaining Lanham Act Elements

With the first two elements of a false advertising claim sufficiently alleged, the Court turns to the remaining three elements of materiality, interstate commerce nexus, and damage.

A misrepresentation is material if it "is likely to influence the purchasing decision" of prospective consumers. Cook, Perkiss & Liehe, Inc., 911 F.2d at 244. "[M]isrepresentations that relate to the principal bases of competition among sellers" are material. In re Century 21-RE/MAX Real Estate Adver. Claims Litig., 882 F. Supp. 915, 923 (C.D. Cal. 1994) (citing In re Uranium Antitrust Litigation, 473 F.Supp. 393, 408 (N.D. Ill. 1979)).

Here, the misrepresentations go to the principal bases of competition between BNI and RLI. The letter asserts that RLI's suite of services is superior to BNI's and that potential customers should choose to affiliate with RLI for that reason. This tends to diminish BNI's position in the marketplace relative to RLI.

Second, the communications containing the false statements were mailed by letter; this clearly satisfies the interstate commerce nexus requirement.

Finally, BNI has provided evidence that its membership has been negatively affected by RLI and Chin's misrepresentations. (Mot. at 12-13.) BNI submitted the declaration of Teresa Morris-Simon, a BNI franchise owner in Southern Illinois, Missouri, Southeast Kansas, Arkansas, and Texarkana. (Declaration of Teresa Morris-Simon ("Morris-Simon Decl.") (Doc. No. 10-3) ¶ 1.) Morris-Simon states that

she is aware of a former BNI chapter president who, after "communicating with and receiving false information [from]" Chin, terminated her relationship with BNI to join RLI. (Id. ¶ 3.) This former chapter president has also recruited persons to RLI who were existing or potential BNI members. (Id. ¶ 5.)

She further relates that other BNI members have been induced to join RLI; in some instances those members have attempted to maintain their relationship with BNI while simultaneously joining RLI, in violation of the BNI member agreement. (Id. ¶ 4.)

BNI also submitted the declaration of Jana Cardona, a BNI franchise owner and Executive Director for the Western Tennessee and Northern Mississippi regions. (Declaration of Jana Cardona (Doc. No. 10-6) ¶ 1.) Cardona states that a leadership team member of a BNI chapter in her region terminated her relationship with BNI after communicating with Chin. (Id. ¶¶ 5-6, 8.) This person later joined RLI. (Id. ¶ 7.)

This evidence is sufficient to show that BNI has been and is likely to be injured in the future through the diversion of sales or by the lessening of the goodwill its services enjoy with the buying public.

Accordingly, BNI has shown a likelihood of success on the merits of its claim for false advertising under the Lanham Act.

### 2. Tortious Interference with Contractual Relations/Prospective Economic Advantage

BNI also alleges the letters sent by Chin on behalf of RLI constitute tortious interference with contractual relations and tortious interference with prospective economic advantage, as the letters used falsehoods to induce BNI members to terminate their relationship with BNI to join RLI. (Compl. ¶¶ 49-50, 58-59.) According to BNI, Chin's prior association with BNI made him privy to the company's requirement that members, leadership, and directors are required to enter into contracts with BNI; Chin's actions in using false statements of fact to induce members to break those contracts to join RLI constituted tortious conduct. (Id. ¶¶ 51-55, 59-65.)

In order to state a claim for tortious interference with economic advantage under California law, a plaintiff must show: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." Marsh v. Anesthesia Serv. Med. Grp., Inc., 200 Cal. App. 4th 480, 504 (2011) (citing Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003)). The tort of intentional interference with contractual relations has similar elements; the "chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990) (citations omitted). Additionally, "the third element of the tort of interference with prospective economic advantage 'also requires a plaintiff to plead intentional wrongful acts on the part of the defendant designed to disrupt the relationship.'" Marsh, 200 Cal. App. 4th at 504.

Here, it appears likely that BNI could succeed on both claims. Chin, by virtue of his previous relationship with BNI, knew that every BNI member entered into a contractual relationship with BNI. (Compl. ¶¶ 27-29, 50, 60; Misner Decl. ¶¶ 11, 14.) Chin and RLI intentionally contacted BNI members for targeted advertising; that advertising contained falsehoods as discussed above. Some BNI members have broken their contractual relationship with BNI to join RLI, based on the representations made by Chin in the letters. The loss of those members and future potential members caused BNI economic harm.

Accordingly, BNI's claims for interference with contractual relations and interference with prospective economic advantage are likely to succeed. See Brian Lichtenberg, LLC v. Alex & Chloe, Inc., 2014 WL 3698317 (C.D. Cal. July 25, 2014) (granting preliminary injunction for plaintiff alleging false advertising claims and interference with economic relations where defendant had made false statements to

plaintiff's buyers to induce them to buy defendant's products rather than plaintiff's).[2]

## B. BNI Will Suffer Irreparable Harm if an Injunction Does Not Issue

"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." Ariz. Dream Act Coalition v. Brewer, 757 F.3d 1053, 1068 (9th Cir. 2014). "When an advertisement draws an explicit comparison between the competitor's product and plaintiff's, then such a causative link of irreparable injury is presumed because '[a] misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer.'" Mut. Pharm. Co., 459 F. Supp. 2d at 944 (citing McNeilab, Inc. v. American Home Products Corp., 848 F.2d 34, 38 (2nd Cir. 1988)).

RLI's and Chin's letter contains such a comparison; that comparison asserts that RLI's business offerings are superior because it offers services that BNI does not. As discussed above, these contentions are false. Additionally, BNI has shown that allowing further advertisements to BNI members inducing them to break their agreements with BNI will cause it economic harm. Accordingly, BNI has shown it will suffer irreparable harm in the absence of an injunction in this case.

## C. The Balance of Equities Weighs Strongly in BNI's Favor

When assessing if a preliminary injunction should issue, courts must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Vill. Of Gambell, Alaska, 480 U.S. 531, 542 (1987).

The balance of equities tips strongly in BNI's favor. BNI is under the continued threat that Chin and RLI will make false statements to current and potential BNI customers. RLI should suffer no harm by entry of an injunction because "there is no harm to a defendant from an injunction which prevents continuing dissemination of

---

[2] As BNI's has demonstrated a likelihood of success on its Lanham Act and tortious interference claims, and because its claim for violation of California Business and Professions Code § 17200 would not grant it any additional relief beyond injunctive relief at this stage, the Court does not reach that claim.

false statements." POM Wonderful LLC v. Purely Juice, Inc., 2008 WL 4222045, at *16 (C.D. Cal. July 17, 2008) aff'd, 362 F. App'x 577 (9th Cir. 2009) (citing Visioneer, Inc. v. UMAX Technologies, Inc., 1998 WL 856080, at *3 (N.D. Cal. Dec. 7, 1998)). Requiring a defendant to refrain from using false statements in the marketplace poses little danger of prejudice; "[s]uch requested relief poses little, if any, harm to [the defendant]." Id. (quoting Sun Microsystems, Inc. v. Microsoft Corp., 87 F.Supp.2d 992, 998 (N.D. Cal. 2000).

Though Chin and RLI may be required to reformulate their business strategy to refrain from making false statements about BNI's business or inducing BNI customers to breach their member agreement, this does not tip the balance of hardships in their favor.

### D.  An Injunction Is in the Public Interest

Finally, an injunction is in the public interest.  "[T]he most basic public interest at stake in all Lanham Act cases [is] the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy." Warner Bros. Entm't v. Global Asylum, Inc., 2012 WL 6951315, at *23 (C.D. Cal. Dec. 10, 2012) aff'd sub nom. Warner Bros. Entm't v. Global Asylum, Inc., 544 F. App'x 683 (9th Cir. 2013) (quoting Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 730 (3d Cir. 2004)). Accordingly, "[t]here is a strong public interest in preventing false advertising of products in the marketplace." POM Wonderful LLC, 2008 WL 4222045, at *16 (quoting Kennedy Industries, Inc. v. Aparo, 416 F.Supp.2d 311, 317 (E.D. Pa. 2005)).  RLI and Chin's false advertisements have induced BNI members to leave BNI.  The public interest would be served by enjoining such conduct.

As all of the Winter factors favor entry of a preliminary injunction against Chin and RLI, the Court will enter an injunction in favor of BNI, as discussed below.

### E.  Scope of the Injunction

Having determined that BNI is entitled to a preliminary injunction, the Court next turns to the scope of the injunctive relief.  When assessing claims under the Lanham Act, courts have the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."  15 U.S.C.

§ 1116. Injunctive relief is also appropriate in the context of tortious interference. See Brian Lichtenberg, LLC, 2014 WL 3698317, at *8 (C.D. Cal. July 25, 2014).

The scope of an injunction is within the broad discretion of the district court. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 829 (9th Cir. 2011) (citing Interstellar Starship Servs., Ltd. v. Epix, Inc., 304 F.3d 936, 941 (9th Cir. 2002)). "Injunctive relief . . . must be tailored to remedy the specific harm alleged." Lamb-Weston v. McCain Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991).

BNI proposes that Chin, RLI, and their agents be enjoined from:

> (a) soliciting BNI members, leadership team and independent contractors and inducing them to breach their agreements with BNI or otherwise interfering with their relationship with BNI;
>
> (b) disseminating false statements regarding the services of BNI and/or the services of Defendants in commercial advertising or promotion;
>
> (c) soliciting investors into franchises without proper disclosure;
>
> (d) engaging in unfair competition with respect to the offering of networking and referral organization services; and
>
> (e) assisting, directing, authorizing, ordering, facilitating, aiding, or abetting, whether directly or indirectly, any other individual or entity in engaging in or performing any of the activities referenced in the above subparagraphs (a) through (d).

(Plaintiffs' Proposed Order to Show Cause for a Preliminary Injunction (Doc. No. 10-8) at 2-3.)

With respect to section (c), BNI appears to be asserting a request for injunctive relief based on California's Franchise Investment Law, California Corporations Code §§ 31000, et seq., which requires franchisors to make certain disclosures to prospective franchisees. See Spahn v. Guild Indus. Corp., 94 Cal. App. 3d 143, 150

n.11 (1979) (noting required disclosures to prospective franchisees under the law). It is unclear if BNI has standing to assert a claim for unfair competition based on the allegation RLI has failed to provide the required franchise disclosure documents to prospective franchisees. In any case, this request is overbroad. BNI's request that the Court enter an injunction prohibiting RLI, Chin, or their agents from "engaging in unfair competition with respect to the offering of networking and referral organization services" is similarly overbroad.

Accordingly, the Court will enter an order enjoining Defendants and their agents from inducing BNI members to breach their member agreement with BNI and from disseminating advertisements with false statements about BNI.

**F.     Amount of Bond**

Finally, when issuing a preliminary injunction, the party requesting such relief is required to post bond "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Though Rule 65(c) is couched in mandatory language, "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation and internal quotation marks omitted). The district court may even dispose of the bond requirement where there is no proof of likelihood of harm. World Grp. Sec. v. Tiu, 2003 WL 26119461, at *8 (C.D. Cal. July 22, 2003) (citing Doctor's Assocs. Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996)).

As RLI and Chin have failed to respond to the instant Motion and BNI's Complaint shows a strong likelihood of success on the merits, only a small bond is necessary in this instance. Accordingly, the Court requires BNI to post a bond of $5,000.00.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Motion, and issues the following injunction against Defendants Timothy Chin and Referral Leaders International, LLC:

Defendants and each of their principals, officers, agents, servants, employees, parents, subsidiaries, affiliates, attorneys as well as other persons and/or entities in concert and participation with them who have notice of this Order are enjoined, pending trial in this action, from:

>(a) soliciting BNI members, leadership team and independent contractors and inducing them to breach their agreements with BNI or otherwise interfering with their relationship with BNI;

>(b) disseminating false statements regarding the services of BNI and/or the services of Defendants in commercial advertising or promotion;

>(c) assisting, directing, authorizing, ordering, facilitating, aiding, or abetting, whether directly or indirectly, any other individual or entity in engaging in or performing any of the activities referenced in the above subparagraphs (a) through (b).

**IT IS SO ORDERED.**